UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PAEZ CASTRO JORGE ADALBERTO,
Petitioner,
v.
JOHN MATTOS, et al.,
Respondents.

Case No. 2:26-cv-01054-ART-EJY

ORDER GRANTING AMENDED HABEAS PETITION (ECF No. 8) AND DENYING TRO (ECF No. 11)

Petitioner Paez Castro Jorge Adalberto has been detained in the Nevada Southern Detention Center for over six months without an opportunity to seek release on bond. He brings this habeas petition (ECF No. 8) and temporary restraining order (ECF No. 11) against Respondents to challenge his detention. The Court finds that Mr. Adalberto is entitled to immediate release because he was not afforded proper statutory process or constitutional due process upon his re-detention. The Court now grants his petition for habeas corpus.

## I. Background

Mr. Adalberto is a citizen of Columbia who fled his country after he and his partner experienced a violent sexual assault by a local official on the basis of their sexual orientation. (ECF No. 8 at 4). He entered the United States on April 19, 2023 (*id.*), when he was then taken into ICE custody and given a notice and order of expedited removal proceedings the following day (ECF No. 9-10). Mr. Adalberto was provided with a Notice to Appear on April 23, 2024, which commenced standard (non-expedited) removal proceedings against him. (ECF No. 8 at 6).

Based on a credible fear determination for Mr. Adalberto's past persecution on the grounds of his sexuality (ECF No. 9-21), Mr. Adalberto was granted humanitarian parole under the Alternatives to Detention program on May 4, 2023

(ECF No. 9-7). Mr. Adalberto's parole was "valid for one year…and will automatically terminate upon…departure or removal" unless ICE provided a discretionary extension. (ECF No. 9-7). No evidence has been presented to establish that Mr. Adalberto was granted an extension of his parole after May 4, 2024.

Mr. Adalberto's filed an asylum application on February 29, 2024, which is still pending. (ECF No. 8 at 7). Counsel for Petitioner represented during the habeas petition hearing that Mr. Adalberto's asylum application has been continued multiple times, with the next hearing set for September 17, 2026.

Mr. Adalberto continued to submit requested data and attend hearings and appointments under the conditions of his parole program after its expiration date had passed. (*See id.*). On April 9, 2024, Mr. Adalberto was arrested for a misdemeanor DUI, for which he pleaded guilty on October 16, 2024, and was given one year of unsupervised probation. *Id.* Mr. Adalberto notified ICE of his guilty plea during his December 2025 in-person appointment, but continued to live under the conditions of his previously granted parole. *Id.* It was not until his March 9, 2026, that Mr. Adalberto was detained by ICE at a parole appointment on account of his October 2024 conviction. *Id.* at 8, ECF No. 9-5.

On March 20, 2026, Mr. Adalberto moved for a bond hearing before an immigration judge. (ECF No. 9-9). An immigration judge held a custody redetermination hearing on March 31, 2026, and denied Mr. Adalberto's request, finding that they lacked the authority to grant Mr. Adalberto bond. (ECF No. 9-23). A second custody redetermination hearing was held on April 6, 2026. (ECF No. 9-22). The immigration judge found that Mr. Adalberto was subject to mandatory custody and again denied his request for a bond hearing, in addition to making an explicit finding that he was not a danger to the community. *Id.* While the government represents that Mr. Adalberto has appealed the April 6,

2026 bond determination (ECF No. 17 at 2), no evidence has been presented of this appeal or its substance. Evidence on the record instead points to the fact that Mr. Adalberto waived his right to appeal. (*See* ECF No. 17-1) (Immigration judge finding "[b]oth parties waived appeal.").

Mr. Adalberto has remained in detention for over six months without a bond hearing or an individualized determination about his detention.

## II. Legal Standard

### A. Habeas Corpus Under 28 U.S.C. § 2441

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B. Due Process

Noncitizens present in the United States are entitled to due process protections. *See, e.g., Trump v. J.G.G.*, 604 U.S. 670 (internal citations and quotations omitted) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."); *Zadvydas*,

533 U.S. at 693 (applying due process in the context of detention). The rights of noncitizens include rights to "notice and opportunity to be heard 'appropriate to the nature of the case.'" *J.G.G.*, 604 U.S. at 673 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)); *see also Mathews v. Eldrige*, 424 U.S. 319, 332 (1976).

To determine whether detention violates procedural due process, courts in the Ninth Circuit typically apply the *Mathews* test. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (observing that the Ninth Circuit and other circuits continue to apply the *Mathews* test notwithstanding the Government's heightened interest in detaining immigrants.) Under that three-part test, the court weighs (1) the private interest at stake, (2) the risk of an erroneous deprivation of that private interest and the value of additional safeguards, and (3) the Government's countervailing interests. *Id.*

**III. Petitioner is Detained Under 8 U.S.C. § 1226(a)**

First, the Court finds that Mr. Adalberto is detained pursuant to 8 U.S.C. § 1226(a) and is not subject to mandatory detention.

The Court rejects Respondents' argument that Mr. Adalberto is subject to mandatory detention under 8 U.S.C. § 1225(b)(1). Respondents argue that Mr. Adalberto is not entitled to a bond hearing or release under § 1225(b)(1), because he was initially subject to expedited removal proceedings and then transferred to full removal proceedings after the expiration of his parole. (ECF No. 17 at 11–12). Section 1225(b)(1) provides for mandatory detention "pending a final determination of credible fear of persecution" for individuals who are "arriving in the United States" or who have "not been admitted or paroled into the United States" and made required showings. 8 U.S.C. § 1225(b)(1). Respondents maintain that after Mr. Adalberto's parole expired, he was not "arriving," "admitted," or "paroled" into the country and is thereafter subject to detention

under § 1225(b)(1). (ECF No. 17 at 11–12). This argument is misplaced.

Mr. Adalberto is subject to discretionary detention under § 1226(a). Section 1226(a) permits the detention of an "arrested alien," as well as release on bond or conditional parole. 8 U.S.C. § 1226(a). The Court follows the reasoning in *Gomez v. Bondi*, 2026 WL 788805 (D. Nev. Mar. 20, 2026) to reach its conclusion. In *Gomez*, the court found that a petitioner who was placed in standard removal proceedings following a credible fear interview, was detained subject to § 1226(a), because:

> "Section '1225(b)(1) only mandates detention of noncitizens arriving in the United States during the pendency of expedited removal proceedings and the credible fear interview and review process,' which ceased in Petitioner's case nearly two years ago when he received a credible fear determination and was released from ICE custody upon being placed in standard removal proceedings."

*Id.* at *2 (internal citations omitted). Just like the petitioner in *Gomez*, Mr. Adalberto was detained upon entering the country, initially placed in expedited removal proceedings, found to have credible fear, transitioned into standard removal proceedings, and spent multiple years outside of ICE custody before his re-detention. Because Mr. Adalberto is neither arriving in the United States nor in expedited removal proceedings, he is not subject to detention under § 1225(b)(1).

## IV. Petitioner is Entitled to Immediate Release As Required By Due Process Under the 5th Amendment

Mr. Adalberto is entitled to immediate release because his parole was never lawfully terminated. As this Court previously held, an immigration parolee is "owed prior notice, individualized assessment, and an opportunity to be heard before re-detention." *Arce Padilla v. Mullin*, No. 3:26-CV-270-ART-CSD, 2026 WL 1245462, at *3 (D. Nev. May 6, 2026). It violates due process to detain a person

who has been paroled into the United States without lawfully terminating their parole first. *Id.*; *see Caisa Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026); *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1178 (D. Nev. 2025).

To determine whether Mr. Adalberto's detention violates procedural due process, the court weighs (1) the private interest at stake, (2) the risk of an erroneous deprivation of that private interest and the value of additional safeguards, and (3) the Government's countervailing interests. *Rodriguez Diaz*, 53 F.4th at 1206 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

**1. The Private Interest**

Mr. Adalberto's interest in liberty is significant. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Hamdi*, 542 U.S. at 529; *see also Zadvydas*, 533 U.S. at 696. Even when an individual is subject to conditions of parole or release, they have "relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," and their liberty interest "is valuable and must be seen as within the protection of the [Due Process clause]" such that termination of parole "calls for some orderly process." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). District courts in this circuit have applied this principle to parole from immigration detention. *See, e.g., Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 800 F.Supp.3d 1130 (W.D. Wash. Sept. 12, 2025) (collecting cases).

The first *Mathews* factor weighs heavily in Mr. Adalberto's favor. Mr. Adalberto was granted parole on May 4, 2023; both Mr. Adalberto and Respondents acted consistently with the conditions and obligations of this parole until his re-detention on March 9, 2026. (*See* ECF No. 8 at 6–8). During his

parole, Mr. Adalberto worked in Idaho and successfully completed the unsupervised probation associated with his misdemeanor conviction. *Id.* at 7. Mr. Adalberto also remained under the conditions of his parole for almost three months after notifying ICE about his conviction. *Id.* In the time since his initial parole, he has acquired a significant liberty interest entitled to the protection of the Due Process Clause. *Telenchana*, 2026 WL 696806, at *11; *Musaev v. Hermosillo*, No. 2:26-CV-00522-RAJ, 2026 WL 925611, at *5 (W.D. Wash. Apr. 6, 2026).

**2. Risk of Erroneous Deprivation**

Since Federal Respondents failed to comply with the requirements for revoking humanitarian parole, the risk of the erroneous deprivation of Mr. Adalberto's liberty is high. *Flores Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *7 (W.D. Wash. Jan. 20, 2026).

As a preliminary matter, it appears that DHS failed to follow its own regulations for terminating parole. The parole regulatory framework permits the automatic termination of parole "without written notice" for an individual remaining within the country "at the expiration of the time for which parole was authorized," provided that they "shall be [otherwise] processed in accordance with paragraph (e)(2)." 8 C.F.R. § 212.5(e)(1)(ii). To the extent that the parole regulations dispense with the written notice requirement for "expired" grants of parole, other procedure remains. The regulations contemplate that the detained individual be released on parole if "the exclusion, deportation, or removal order cannot be executed within a reasonable time," unless an official opinion is offered that continued detention is in "the public interest." 8 C.F.R. § 212.5(e)(2)(i).

No evidence supports finding that the government provided any opportunity to be heard or that official opinion that continued detention is in the public interest was made. Respondents conceded during the habeas petition

hearing that no such process was afforded to Mr. Adalberto. There is nothing to show that Mr. Adalberto was provided with notice of termination of parole in a charging document, an opportunity to be heard, or otherwise afforded the process required by 8 C.F.R. § 212.5(e)(2)(i) and due process prior to re-detention. *See, e.g., Musaev*, 2026 WL 925611, at *6; *Dieng v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026); *Telenchana*, 2026 WL 696806, at *7.

The lack of any procedural safeguards whatsoever creates a risk of factual and legal mistakes. *Rodriguez Cabrera*, 808 F. Supp. 3d at 1181; *Gaitan Coreas v. Mullin*, No. 2:26-CV-00591-GMN-DJA, 2026 WL 1121974, at *7 (D. Nev. Apr. 24, 2026). Respondents' failure to follow their own regulations created an undue risk of erroneous deprivation. Due process requires, at minimum, that the government justifies the basis for re-detention, and that the noncitizen be given the opportunity to be heard with respect to re-detention at a meaningful time and in a meaningful manner. *Telenchana*, 2026 WL 696806 at *12, *Dieng*, 2026 WL 411857, at *8; *see also Gaitan Coreas*, 2026 WL 1121974, at *7; *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *6 (E.D.N.Y. Nov. 25, 2025). Accordingly, the second *Mathews* factor favors Mr. Adalberto.

**3. The Government's Interest**

The Government has a strong interest in the efficient administration of immigration laws, including those regarding detention of non-citizens. *Rodriguez Diaz*, 53 F.4th at 1208. However, the Government's interests will still be adequately protected if immigrants are afforded some minimal procedural guarantees. *Rodriguez Cabrera*, 808 F. Supp. 3d at 1182; *see Gaitan Coreas*, 2026 WL 1121974, at *7 ("[T]he government's interest in detaining Petitioner without a hearing is low"). Respondents have not argued that it is costly for them to provide notice of re-detention and an opportunity to be heard. *See Gaitan*

*Coreas*, 2026 WL 1121974, at *7 ("[C]ustody hearings are routine and impose a 'minimal' cost.") Finally, the Government does not have an interest in detaining noncitizens in a manner that violates its own regulations. *O.F.B.,* 2025 WL 3277677, at *7. Accordingly, the third *Mathews* factor also favors Mr. Adalberto.

**C. Remedy**

In like cases, district courts in the Ninth Circuit have generally granted release on parole. *See, e.g. Arias v. Larose*, No. 3:25-CV-02595-BTM-MMP, 2025 WL 3295385, at *5 (S.D. Cal. Nov. 25, 2025); *Gaitan Coreas*, 2026 WL 1121974, at *8. The Constitution ordinarily "requires some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Thus, "because the constitutional violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante—that is, to return [Petitioner] to the conditions that existed before his unlawful detention." *Kirykovich v. Hernandez*, No. 2:26-cv-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) (emphasis in original).

**V. Administrative Exhaustion Does Not Preclude Granting Petition**

As a preliminary matter, Respondents argue that the Court should decline to review Mr. Adalberto's habeas challenge because he failed to exhaust his administrative remedies by appealing the immigration judge's bond determination to the BIA and awaiting its decision. (ECF No. 17 at 3.) This argument fails.

In the context of habeas corpus claims, exhaustion of administrative remedies is a prudential requirement rather than a jurisdictional one, as it is not explicitly required by statute. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994,

998 (9th Cir. 2004). Neither the habeas statute, 8 U.S.C. § 2241, nor the relevant sections of the Immigration and Nationality Act ("INA") require petitioners to exhaust administrative remedies before filing petitions for habeas corpus; accordingly, administrative exhaustion here is prudential and the Court has discretion to waive it. *Id.* (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)).

Courts may waive prudential exhaustion if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing*, 370 F.3d at 1000 (citation omitted). Mr. Adalberto bears the burden of demonstrating at least one of the *Laing* factors applies. *See Ortega Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018).

First, Respondents have provided no evidence to support their contention that Mr. Adalberto has filed an appeal against the immigration judge's bond hearing decision (ECF No. 17 at 2), and evidence on the record indicates that he in fact waived his right to appeal (*see* ECF No. 17-1). Furthermore, Mr. Adalberto argues that an appeal would be futile, because the position that Respondents and the immigration judge have taken is that he is not entitled to a bond hearing under § 1225(b)(1) mandatory detention. (ECF No. 19 at 4–5). The Court agrees that his appeal would be futile, because Mr. Adalberto is detained under § 1226(a) and previous custody determination hearings have foreclosed relief on jurisdictional grounds under § 1225(b)(1). *See Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("We will excuse a failure to exhaust if it is very likely what [the BIA's] result would have been. Thus, where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required.") (cleaned up).

Additionally, irreparable injury would likely result if Mr. Adalberto waited

for BIA review. Mr. Adalberto has been detained for over six months and will continue to suffer irreparable harm each day he is in immigration detention. (*See* ECF No. 8.) Furthermore, Mr. Adalberto's claim regarding the immigration judge's bond determination would become moot if he is removed while he awaits the BIA's review of the immigration judge's denial of bond. Thus, requiring Mr. Adalberto to await the resolution of a bond appeal could preclude meaningful review of the bond determination.

For reasons such as these, district courts in the Ninth Circuit routinely waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1243–54 (W.D. Wash. 2025) (collecting cases). The Court thus finds waiver of prudential exhaustion is appropriate in this case.

**VI. The Court does not address Petitioner's claims in the alternative**

In his petition for a writ of habeas corpus on constitutional and statutory grounds, Mr. Adalberto raises a second claim in the alternative. Mr. Adalberto argues that he is a member of the *Jacobo-Ramirez* class and is accordingly entitled to a bond hearing. (ECF No. 8 at 23, *see Jacobo Ramirez v. Mullin*, 2026 WL 879799 (D. Nev. Mar. 30, 2026)). Because the Court grants his petition for habeas corpus under his due process claims, the Court need not address this claim in the alternative.

**VII. Conclusion**

It is hereby ordered that the Amended Petition for Writ of Habeas Corpus (ECF No. 8) is GRANTED. Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

Petitioner's motion for a temporary restraining order (ECF No. 11) is DENIED AS MOOT.

It is further ordered that Petitioner must be RELEASED from Nevada Southern Detention Center on September 14, 2026, between 12:00 and 3:00p.m. Counsel for Petitioner (or their designee/agent) will be permitted to wait in the lobby or equivalent area of the Nevada Southern Detention Center during the release window. Petitioner's release is subject to the standard conditions of parole.

It is further ordered that, prior to any re-detention, Petitioner is entitled to (1) notice of the reasons for revocation of his parole and (2) an opportunity to rebut those reasons in a hearing before an impartial adjudicator.

It is further ordered that the parties must FILE a Joint Status Report no later than September 17, 2026, to certify compliance with the Court's order including (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on the standard conditions of parole; and (iii) the return of Petitioner's personal property.

DATED: September 11, 2026

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE